1  DAVE M. McGRAW (SBN 086439)
   THOMAS A. TRAPANI (SBN 100387)
2  **Fidelity National Law Group**
   **The Law Division of Fidelity National Title Group, Inc.**
3  1550 Parkside Drive, Suite 300
   Walnut Creek, CA 94596
4  Telephone: (925) 930-9550
   Facsimile: (925) 930-9588
5
   Attorneys for Plaintiff
6  BANK OF AMERICA, N.A.

7
                    IN THE UNITED STATES BANKRUPTCY COURT
8
                      NORTHERN DISTRICT OF CALIFORNIA
9
                             SAN JOSE DIVISION
10
   In re                              | Case No.: 16-53437 MEH
11
   BERT BIRMINGHAM,                    | Judge:  M. Elaine Hammond
12
          Debtor(s)                    | Chapter 13
13
   _____ | Adversary No.:
14
   BANK OF AMERICA,
15
          Plaintiff,                   | **EXHIBITS 1 – 6 IN SUPPORT OF ADVERSARY**
16                                     | **COMPLAINT**
   vs.
17
   SERGIO ROLDAN, BERT BIRMINGHAM,
18 LORETTA L. BIRMINGHAM, LEXINGTON
   NATIONAL INSURANCE COMPANY, THE
19 FORECLOSURE COMPANY, INC. and
   Chapter 13 Trustee,
20
          Defendants.
21

22

23

24

25

26

27

28

# EXHIBIT 1

| DOCUMENT: | 22222974 | | Pages: | 15 |
|---|---|---|---|---|
| | | Fees. . . . | 67.00 | |
| | | Taxes. . . | .00 | |
| | | Copies . . | .00 | |
| | | AMT PAID | 67.00 | |



0022222974

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
LSI Title Company- Ingeo

RDE # 010
5/16/2013
08:49 AM

Recording Requested By:
**LSI East Recording Solutions**

**Return to:**
LSI
700 Cherrington Pkwy.
Coraopolis, PA  15108
412-299-4000

APN: 8082700800

**Property Address:**
1050 Ortega Circ
Gilroy, CA  95020

# DEED OF TRUST

15574684

See Exhibit A attached

Case: 16-53437     Doc# 76-2     Filed: 06/06/18     Entered: 06/06/18 11:11:04     Page 3 of
Page 13 of 15
Doc: CASCLR:22222974~06085
Requested By: ttrapani, Printed: 7/11/2017 4:06 PM

Recording Requested By:
D. User

After Recording Return To:
BANK OF AMERICA, N.A.

Doc Processing TX2-979-01-19
4500 Amon Carter Blvd.
Ft. Worth, TX 76155
Prepared By:
SARAH BARTLE

———————————————— |Space Above This Line For Recording Data| ————————————————

\*\*\*\*\*\*\*\*063305013
[Doc ID #]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated   MAY 03, 2013   , together with all Riders to this document.

(B) **"Borrower"** is

BERT L BIRMINGHAM, AND LORETTA L BIRMINGHAM, HIS WIFE, AS JOINT TENANTS

Borrower's address is
1050 ORTEGA CIRC, GILROY, CA 95020
Borrower is the trustor under this Security Instrument.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)(d/i)                              Page 1 of 13





**(C) "Lender"** is
BANK OF AMERICA, N.A.
Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
Lender's address is
101 South Tryon Street, Charlotte, NC 28255
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is
RECONTRUST COMPANY, N.A.
1800 TAPO CANYON RD, SIMI VALLEY, CA 93603
**(E) "Note"** means the promissory note signed by Borrower and dated MAY 03, 2013 . The Note
states that Borrower owes Lender
FOUR HUNDRED TWENTY FIVE THOUSAND ONE HUNDRED NINETY and 00/100

Dollars (U.S. $ 425,190.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than JUNE 01, 2043 .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the
Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to
be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider        ☒ Other(s) [specify]
                                                             Exhibit A

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic
tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not
limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers,
and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third
party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of,
the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation;
or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA"
refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the
Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)                                   Page 2 of 13

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | SANTA CLARA | |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 8082700800      which currently has the address of

1050 ORTEGA CIRC, GILROY
[Street/City]

California    95020    ("Property Address"):
[Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    1.    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3005 1/01

Case: 16-53437    Doc# 76-2    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 6 of 34
Page 4 of 15            Requested By: ttrapani, Printed: 7/11/2017 4:06 PM

against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                                    Page 4 of 13

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

    **4.**   **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

    **5.**   **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)                           Page 5 of 13

to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Case: 16-53437    Doc# 76-2    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 9 of
                                    Page 7 of 15

Doc: CASCLR:22222974~06085                                    Requested By: ttrapani, Printed: 7/11/2017 4:06 PM

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due,

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                                    Page 7 of 13

with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including,

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**　　　　　　Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)

Doc: CASCLR:22222974~06085

Requested By: ttrapani, Printed: 7/11/2017 4:06 PM

but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable

Case: 16-53437    Doc# 76-2    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 12 of 34

Page 10 of 15       Requested By: ttrapani, Printed: 7/11/2017 4:06 PM

attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                                    Page 10 of 13

Doc: CASCLR:22222974~06085                                                Requested By: ttrapani, Printed: 7/11/2017 4:06 PM

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Trustee shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

Case: 16-53437    Doc# 76-2    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 14
Page 12 of 15                         of 34

Doc: CASCLR:22222974~06085                                    Requested By: ttrapani, Printed: 7/11/2017 4:06 PM

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BERT L. BIRMINGHAM                -Borrower

_____ (Seal)
LORETTA L. BIRMINGHAM            -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                        Page 12 of 13

State of California

County of _Santa Clara_

On _5/3/2013_ before me, _Stephanie Betparoo, Notary Public_
personally appeared _Bert L. Birmingham_ and
_Loretta L. Birmingham_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____ (Seal)

STEPHANIE BETPAROO
Commission # 1992401
Notary Public - California
Santa Clara County
My Comm. Expires Oct 25, 2016

Case: 16-53437   Doc# 76-2   Filed: 06/06/18   Entered: 06/06/18 11:11:04   Page 16
of 34
Page 14 of 15                    Requested By: ttrapani, Printed: 7/11/2017 4:06 PM

Order No.:     **15574684**
Loan No.:     xn2b

## Exhibit A

The following described property:

All that certain land situated in the State of California, County of Santa Clara, City of Gilroy, described as follows:

Parcel One:

Lot 207, as shown upon that certain Map entitled, "Tract No. 5616, Unit No. 8, Castlewood Park", which Map was Filed for record on May 29, 1975 Book 356 of Maps, at Pages 22 and 23, Santa Clara County Records.

Reserving from Parcel One a drainage easement for installation and maintenance of concrete vee gutter over the Southerly 5 feet thereof for the benefit of Lots 200 through 206 and 208 shown on said Map.

Parcel Two:

A drainage easement for installation and maintenance of concrete vee gutter over the Southerly 5 feet of Lots 200 through 206 and 208, as shown upon that certain Map entitled, "Tract no. 5616, Unit no. 8, Castlewood Park", which Map was Filed for record on May 29, 1975 in Book 356 of Maps, at Pages 22 and 23, Santa Clara County Record.

Assessor's Parcel No:     80827008000

# EXHIBIT 2

RECORDING REQUESTED BY
Financial Title Company
AND WHEN RECORDED MAIL TO

Name    Sergio Roldan
Street Address  1645 East San Martin Avenue
    San Martin, CA 95046
City,State Zip

Order No. 41183295-275-SQ1

DOCUMENT: 19352696

Pages: 4

Fees .. 25 00
Taxes.
Copies.
AMT PAID 25 00

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Financial Title Company

RDE # 014
3/22/2007
8:00 AM

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ACCOMMODATION ONLY
# DEED OF TRUST WITH ASSIGNMENT OF RENTS
### (This Deed of Trust contains a "DUE-ON-SALE" clause)

This DEED OF TRUST, made December 21, 2006, between

Bert L. Birmingham and Loretta L. Birmingham, his wife, as joint tenants, herein called TRUSTOR,
whose address is 1050 Ortega Circle    Gilroy, CA 95020
    (Number and Street)    (City)    (State)    (Zip)

Financial Title Company, a California Corporation, herein called TRUSTEE, and

Sergio Roldan, a married man as his sole and separate property,    , herein called
BENEFICIARY,

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale, that property described as:

See Exhibit A attached hereto and made a part hereof.

If the trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at its option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing (1) payment of the sum of $ 60,476.00. with interest thereon according to the terms of a promissory note or notes of even date, with a maturity year of _2007_ herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

D-8 (Page 1)

Requested By: ttrapani, Printed: 7/12/2017 5:42 PM

**DO NOT RECORD**

The following is a copy of Subdivision A and B of the fictitious Deed of Trust recorded in each county in California as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

**A** To protect the security of this Deed of Trust, Trustor agrees:

(1) To keep said property in good condition and repair not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

**B.** It is mutually agreed:

(1) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plans thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matter or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person legally entitled thereto.

(7) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

**REQUEST FOR FULL RECONVEYANCE**

TO Financial Title Company, TRUSTEE:

The undersigned is the legal owner and holder of the note or notes, and of all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated _____

_____

Signature must be notarized

Please mail Deed of Trust,
Note and Reconveyance to _____

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

Case: 16-53437    Doc# 76-2    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 20

Doc: CASCLR:19352696~06085

Requested By: ttrapani, Printed: 7/12/2017 5:42 PM

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of trust recorded in the book and page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-26 | 615 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4788 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 303 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego SERIES 5 Book 1964, Page 149774 | | | | | |

Said agreements, terms and provisions contained in said subdivision A and B, (identical in all counties are printed on the reverse side hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by laws.

The foregoing assignment of rents is absolute unless initialed here, in which case, the assignment serves as additional security.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at this address hereinbefore set forth.

Dated: __December 21, 2006__

STATE OF CALIFORNIA
COUNTY OF __SANTA CLARA__ _____ s.s. }

On __MAR 12 th, '7__ before me,
__BALJINDER SANDHU__

Notary Public, personally appeared
__BERT L. BIRMINGHAM__
__& LORETTA L. BIRMINGHAM__
~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature __Baljinder Sandhu__

_Bert L. Birmingham_
Bert L. Birmingham

_Loretta L. Birmingham_
Loretta L. Birmingham

(This area for official notarial seal)

BALJINDER SANDHU
COMM #1706810
Notary Public-California
SANTA CLARA COUNTY
My Comm. Exp. Dec 20, 2010

D-8 (Page 2)                    3/94

**Exhibit A**

All that certain real property situated in the City of Gilroy, County of Santa Clara, State of California, described as follows:

PARCEL ONE:

LOT 207, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 5616, UNIT NO. 8, CASTLEWOOD PARK", WHICH MAP WAS FILED FOR RECORD ON MAY 29, 1975 IN BOOK 356 OF MAPS, AT PAGES 22 AND 23, SANTA CLARA COUNTY RECORDS.

RESERVING FROM PARCEL ONE A DRAINAGE EASEMENT FOR INSTALLATION AND MAINTENANCE OF CONCRETE VEE GUTTER OVER THE SOUTHERLY 5 FEET THEREOF FOR THE BENEFIT OF LOTS 200 THROUGH 206 AND 208 SHOWN ON SAID MAP.

PARCEL TWO:

A DRAINAGE EASEMENT FOR INSTALLATION AND MAINTENANCE OF CONCRETE VEE GUTTER OVER THE SOUTHERLY 5 FEET OF LOTS 200 THROUGH 206 AND 208, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 5616, UNIT NO. 8, CASTLEWOOD PARK", WHICH MAP WAS FILED FOR RECORD ON MAY 29, 1975 IN BOOK 356 OF MAPS, AT PAGES 22 AND 23, SANTA CLARA COUNTY RECORDS.

Requested By: ttrapani, Printed: 7/12/2017 5:42 PM
Doc: CASCLR:193526960v06085

# EXHIBIT 3

DOCUMENT: 19146556

Pages: 4

Fees 25.00
Taxes
Copies..
AMT PAID 25 00

BRENDA DAVIS          RDE # 009
SANTA CLARA COUNTY RECORDER   10/18/2006
Recorded at the request of    8:00 AM
First American Title Company

Recording Requested By:

**Recording Requested By**
First American Title
Escrow No. 788-2518353

And when recorded return to:
Lexington National Insurance Corp.
214 East Lexington Street
Baltimore, Maryland 21202
(410) 625-0800

3078300 - HA

SPACE ABOVE THIS LINE FOR RECORDER-S USE

### SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

Securing Indemnity Agreement for Surety Bail Bond dated 27th day of April, 2006, between Greg Padilla and Lexington National Insurance Company and Bert L. & Loretta L. Birmingham, Designated Indemnitor in the amount of $150,000.00. (One Hundred and Fifty thousand and no/ 100's)

Defendant: __Jeffrey Whalen__          Bond # (s):_ 2006-ZZ-002766 _____

This Deed of Trust, made this _____ between __Bert L. and Loretta L. Birmingham__ (herein called ATrustor@), whose address is: __1050 Ortega Circle, Gilroy CA 950203_ and Greg Padilla (herein called ATrustee@), and LEXINGTON NATIONAL INSURANCE CORPORATION, herein called Beneficiary, Witnesseth: that Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with power of sale, all of that property in __Santa Clara County_, State of California, described as:

APN: 808-27-008          SEE  EXHIBIT " A"

Property Address: _1050 Ortega Circle, Gilroy, CA 95020_ together with appurtenances thereto and the rents issues and profits thereof. This trust and the property hereby conveyed are security for the performance by the Trustor of each agreement herein contained and for the performance of all obligation of _Bert L. & Loretta L. Birmingham__, as set forth and described in that certain Indemnity Agreement for Surety Bail Bond between said _Jeffrey Whalen_ and _Greg Padilla_ and , Beneficiary dated _____, and all amendments or addenda thereto (which contract is made a part hereof by reference as though fully set forth herein) and for the payment of all monies due or which may become due under said contract and for payment of all losses, damaged, expenses and liabilities which may be suffered, sustained or incurred by the Beneficiary under said contract by reason of any failure of said Agent to perform any of his obligations.

Trustor agrees:

(1)    To keep said property in good condition and repair; not to remove or demolish any building thereon; to maintain adequate insurance thereon and to pay; at least ten days before delinquency all taxes and assessments affecting said property, all encumbrances, charges and liens, with interest, on said property or any part thereof, and all cost, fees and expenses of this Trust.

(2)    That upon default of any of his/her obligation or the obligations of Agent to Beneficiary hereby secured, the Beneficiary may collect rents, issues and profits of said property.

(3)    That Beneficiary, or any successor in ownership of any indebtedness or obligation secured hereby, may from time to time by instrument, in writing substitute a

successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the country of counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties.

(4)     That a certificate signed by the Beneficiary at any time hereafter setting forth that any bond or undertaking has been declared forfeited or that a loss, damage, expenditure or liability has been sustained or incurred by Beneficiary on account of any bond or undertaking written, effected or posted by or at the request of said Agent or the monies have become due to Beneficiary under the contract herein above referred to; the date or dates an amount of such loss, damages, expenditures and/or liability; that payment had been demanded of said Agent and that such loss, expenditures, and/or liability has not paid to the Beneficiary, shall be conclusive and binding on the Trustor and shall be the warrant of the Trustee to proceed forthwith to foreclose and sell upon the security herein and from the proceeds of sale (after deducting expenses including cost and search of evidence title) pay to the Beneficiary the amount so certified and such additional expenses as may thereafter be certified including interest at ten percent(10%) per annum from the date of demand to date of payment and attorney fees.  Upon delivery of said certificate of Trustee, Beneficiary may declare all sums or obligations secured hereby due and payable by delivery to trustee or written declaration of default and demand for sale and of written notice of default and election to cause property to be sold, which notice Trustee shall cause to be duly filed for record.

The Trustor represents and warrants that the said property is free and clear of all liens and encumbrances, saving and excepting that certain Mortgage/Deed of Trust securing bail bond number(s) _2006-ZZ-002766,_ having an approximate principal balance of  One Hundred Fifty Thousand and no/100's ----- , ($_150,000.00_ ).

The undersigned Trustor and the herein above Beneficiary request that a copy of any notice of default and any notices of sale affecting the here in above mentioned real property be mailed to Trustor and Beneficiary at their respective addresses here in above set forth, being the address designated for the purpose of receiving such notice.

Signature of Trustor's

Bert L. Birmingham

Loretta L. Birmingham

State of California }

County of : SANTA CLARA }SS.

On _10/12/06_, before me, _C. JO HNSON_, Notary Public, personally appeared _BERT L BIRMINGHAm & LORETA L. BIRMINGHAm_ (personally known to me or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledges to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature _____
          Notary Public

Commission Expires: _9-23-09_

f:\luss\cshfom\wallenthertform

C. JOHNSON
Comm. # 1608722
NOTARY PUBLIC- CALIFORNIA
Santa Clara County
My Comm. Expires Sep 23, 2009

Doc: CASCLR:19146556v06085
Requested By: ttrapani, Printed: 7/11/2017 4:16 PM

## DESCRIPTION

All that certain land situated in the State of California, County of **SANTA CLARA**, City of **GILROY**, described as follows:

**PARCEL ONE:**

LOT 207, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 5616, UNIT NO. 8, CASTLEWOOD PARK", WHICH MAP WAS FILED FOR RECORD ON MAY 29, 1975 IN BOOK 356 OF MAPS, AT PAGES 22 AND 23, SANTA CLARA COUNTY RECORDS.

RESERVING FROM PARCEL ONE A DRAINAGE EASEMENT FOR INSTALLATION AND MAINTENANCE OF CONCRETE VEE GUTTER OVER THE SOUTHERLY 5 FEET THEREOF FOR THE BENEFIT OF LOTS 200 THROUGH 206 AND 208 SHOWN ON SAID MAP.

**PARCEL TWO:**

A DRAINAGE EASEMENT FOR INSTALLATION AND MAINTENANCE OF CONCRETE VEE GUTTER OVER THE SOUTHERLY 5 FEET OF LOTS 200 THROUGH 206 AND 208, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 5616, UNIT NO. 8, CASTLEWOOD PARK", WHICH MAP WAS FILED FOR RECORD ON MAY 29, 1975 IN BOOK 356 OF MAPS, AT PAGES 22 AND 23, SANTA CLARA COUNTY RECORDS.

APN No: **808-27-008**

Doc: CASCLR:19146556~06085

# EXHIBIT 4

ARB No. 903 25ᵀᴴ 47 ALL
PTN⟩
RECORDING REQUESTED BY

LAWYER'S TITLE INSURANCE
CORPORATION

AND WHEN RECORDED MAIL TO

Name JOHN M. FILICE, JR.
Street Address 7951 Wren Avenue, Suite D
City & State Gilroy, CA 95020

MAIL TAX STATEMENTS TO
Name SOUTH COUNTY CASTLEWOOD
Street Address 7951 Wren Avenue, Suite D
City & State Gilroy, CA 95020

**5046870**

Recorded at the request of
*Lawyers Title Insurance Corp.*

JUL 9 1975 8:00AM

GEORGE A. MANN, Recorder
Santa Clara County, Official Records

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Grant Deed

D.T.T. $ 173.80

TO 405 CA (7-73)    THIS FORM FURNISHED BY TITLE INSURANCE AND TRUST COMPANY

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

FILICE ESTATE VINEYARDS, formerly SAN MARTIN VINEYARDS COMPANY, a co-partnership

hereby GRANT(S) to

SOUTH COUNTY DEVELOPMENT CORPORATION, a California Corporation and
CASTLEWOOD PARK DEVELOPMENT, INC., a California Corporation, doing
business as SOUTH COUNTY CASTLEWOOD, a joint venture
the following described real property in the

County of SANTA CLARA    , State of California:

That certain real property situate in the City of Gilroy, County of
Santa Clara, State of California, described as follows:

All of Tract No. 5615 Unit No. 8 "Castlewood Park", as shown on a
Map recorded May 29, 1975 in Book 356 of Maps, at pages 22 and 23,
Santa Clara County Records.

FILICE ESTATE VINEYARDS, FORMERLY
SAN MARTIN VINEYARDS COMPANY, a
co-partnership

Dated July 7, 1975

FRANK C. FILICE, TRUSTEE

JOHN M. FILICE, TRUSTEE

MICHAEL J. FILICE, TRUSTEE

STATE OF CALIFORNIA
COUNTY OF _____ }SS.

On _____ before me, the under-
signed, a Notary Public in and for said State, personally appeared
_____ known to me
to be the person _____ whose name _____ subscribed to the within
Instrument and acknowledged that _____ executed the same.
WITNESS my hand and official seal.

*Acknowledgement not completely filmed*

Signature _____

Name (Typed or Printed) _____

Title Order No. _____ Escrow or Loan No. _____

MAIL TAX STATEMENTS AS DIRECTED ABOVE

# EXHIBIT 5

B 715 PAGE 359

and when recorded mail this deed and, unless otherwise
shown below, mail tax statements, to:

File # 53900/JE
Bill #803-25-058 WOP
Code Area 2-001

4.00

NO CONSIDERATION

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION GRANT DEED

Order No............  Escrow No. 53900/JE  Tax Tax $ none
( ) Full Value ( ) Equity

THIS FORM WAS PROCURED FROM LAWYERS TITLE INSURANCE CORPORATION

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

SOUTH COUNTY - CASTLEWOOD JOINT VENTURE, a joint venture

a corporation organized under the laws of the state of California
hereby GRANTS to

LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation

the following described real property in the City of Gilroy
County of Santa Clara , State of California:

LOTS 200 through 222, inclusive, as shown upon that certain Map
entitled, "TRACT NO. 5616, UNIT NO. 8, CASTLEWOOD PARK", which
Map was filed for record on May 29, 1975 in Book 356 of Maps, at
pages 22 and 23, Santa Clara County Records.

5148520

B 715 PAGE 359

Recorded at the request of
Lawyers Title Insurance Corp.

NOV 13 1975 8:00AM

GEORGE A. MANN, Recorder
Santa Clara County, Official Records

4°

In Witness Whereof, said corporation has caused its corporate name and seal to be affixed hereto and this instrument to be executed by its ............President and ... President .... thereunto duly authorized.

STATE OF CALIFORNIA
COUNTY OF............ } SS.

On.............................before me, the undersigned, a Notary Public in and for said State, personally appeared............................known to me to be the..............President, and............................known to me to be Secretary of the Corporation that executed the within instrument, known to me to be the persons who executed the within instrument on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors.
WITNESS my hand and official seal.

Signature...........................

Acknowledgement not completely filmed

Name (Typed or Printed)

Dated: November 11, 1975
SOUTH COUNTY - CASTLEWOOD JOINT
VENTURE, a Joint Venture

By SOUTH COUNTY DEVELOPMENT CORPORATION

By..........................
President

BY CASTLEWOOD PARK DEVELOPMENT, INC.

By..........................
President

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SO SHOWN, MAIL AS DIRECTED

South County- Castlewood  2510 Stevens Creek Blvd., San Jose, Calif.
Name                        Street Address                    City & State

Case: 16-53437   Doc# 76-2   Filed: 06/06/18   Entered: 06/06/18 11:11:04   Page 31
Doc: CASCLR:5148520~06085                                    Requested By: ttrapani, Printed: 7/12/2017 7:26 PM

# EXHIBIT 6

MR. AND MRS. BERT L. BIRMINGHAM
1050 Ortega Circle
Gilroy, California 95020

B 938 PAGE407  5250241

Recorded at the request of
Lawyers Title Insurance Corp.

MAR 2 9 1976   8:00AM

GEORGE A. MANN, Recorder
Santa Clara County, Official Records

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# CORPORATION GRANT DEED

Order No. _____    Escrow No. 53900-207    Tfr. Tax $ 46.75
(X) Full Value ( ) Equity

THIS FORM WAS PROCURED FROM LAWYERS TITLE INSURANCE CORPORATION

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

LAWYERS TITLE INSURANCE CORPORATION

a corporation organized under the laws of the State of Virginia
hereby GRANTS to

BERT L. BIRMINGHAM AND LORETTA L. BIRMINGHAM, his wife, as joint tenants

the following described real property in the City of Gilroy
County of Santa Clara, State of California:

PARCEL ONE:
Lot 207, as shown upon that certain Map entitled, "TRACT NO. 5616,
UNIT NO. 8, CASTLEWOOD PARK", which Map was filed for record on
May 29, 1975 in Book 356 of Maps, at pages 22 and 23, Santa Clara
County Records.
RESERVING FROM Parcel One a drainage easement for installation
and maintenance of concrete vee gutter over the Southerly 5 feet
thereof for the benefit of Lots 200 through 206 and 208 shown on
said Map.

PARCEL TWO:
A drainage easement for installation and maintenance of concrete
vee gutter over the Southerly 5 feet of Lots 200 through 206 and
208, as shown upon that certain Map entitled, "TRACT NO. 5616,
UNIT NO. 8, CASTLEWOOD PARK", which Map was filed for record on
May 29, 1975 in Book 356 of Maps, at pages 22 and 23, Santa Clara
County Records.

BY ACCEPTING DELIVERY OF THIS DEED, Grantee herein agrees to maintain,
repair, renew and operate said easement in a manner necessary to insure
freedom of drainage through and upon said Easement at all times.

_____    _____
Grantor                  Grantee

Doc: CASCLR:5250241~06085    Requested By: ttrapani, Printed: 7/12/2017 7:25 PM

B 938 PAGE 408

THIS CONVEYANCE IS MADE AND ACCEPTED AND AND
REALTY IS HEREBY GRANTED SUBJECT TO THE DEC-
LARASION OF RESTRICTIONS RECORDED IN BOOK
B 111 OF OFFICIAL RECORDS, AT PAGE 698
AND THE DECLARATIONS OF RESTRICTIONS ARE INCOR-
PORATED BY REFERENCE INTO THE BODY OF
THE INSTRUMENT THE SAME AS THOUGH FULLY SET
FORTH HEREIN.

In Witness Whereof, said corporation has caused its corporate name and seal to be affixed hereto and this instru-
ment to be executed by its _____ Assistant Secretary and Assistant Secretary thereunto duly authorized.

STATE OF CALIFORNIA
COUNTY OF Santa Clara } ss.                          Dated March 19, 1976.

On, MARCH 19, 1976 _____ before me, the under-          LAWYERS TITLE INSURANCE CORPORATION,
signed, a Notary Public in and for said State, personally appeared    a Corporation
JACQUIE ERLANDSON _____, known      By_____
to me to be the _____ Assistant Secretary, and                        Assistant Secretary
_____ JUDITH D. STRYKER _____ known to me to be the   By_____
_____ Assistant Secretary of the Corporation that executed the                    Assistant Secretary
within Instrument, known to me to be the persons who executed
the within Instrument on behalf of the Corporation therein named,
and acknowledged to me that such Corporation executed the
within Instrument pursuant to its by-laws or a resolution of its
board of directors.

WITNESS my hand and official seal.

Signature_____
                    KATHY CORDER

                                                      OFFICIAL SEAL
                                                      Kathy Corder
                                                   NOTARY PUBLIC - CALIFORNIA
                                                   SANTA CLARA COUNTY
                                                   My Commission Expires January 12, 1977
Name (Typed or Printed)                            (This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SO SHOWN, MAIL AS DIRECTED ABOVE.
SAME AS ABOVE ADDRESS.

_____
            Name                    Street Address                    City & State

Case: 16-53437    Doc# 76-2    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 34
Page 34 of 34
Doc: CASCLR:5250241~06085                                    Requested By: ttrapani, Printed: 7/12/2017 7:25 PM