1  DAVE M. McGRAW (SBN 086439)
   THOMAS A. TRAPANI (SBN 100387)
2  **Fidelity National Law Group**
   **The Law Division of Fidelity National Title Group, Inc.**
3  1550 Parkside Drive, Suite 300
   Walnut Creek, CA 94596
4  Telephone: (925) 930-9550
   Facsimile: (925) 930-9588
5
   Attorneys for Plaintiff
6  BANK OF AMERICA, N.A.

7                    IN THE UNITED STATES BANKRUPTCY COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9                    SAN JOSE DIVISION

10 In re                                    Case No.: 16-53437 MEH

11 BERT BIRMINGHAM,                         Judge:  M. Elaine Hammond

12         Debtor(s)                        Chapter 13

13 _____  Adversary No.:

14 BANK OF AMERICA,

15         Plaintiff,                       **EXHIBITS 7 – 15 IN SUPPORT OF**
                                            **ADVERSARY COMPLAINT**
16 vs.

17 SERGIO ROLDAN, BERT BIRMINGHAM,
   LORETTA L. BIRMINGHAM, LEXINGTON
18 NATIONAL INSURANCE COMPANY, THE
   FORECLOSURE COMPANY, INC. and
19 Chapter 13 Trustee,

20         Defendants.

21 _____

22

23

24

25

26

27

28

# EXHIBIT 7

Recording Requested By
First American Title
Escrow No. 0/3/8-25/8353

Recording Requested By:
BANK OF AMERICA

Return To:
LOAN # 3304862711
FL9-700-05-22
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256

DOCUMENT: 19146555



Pages: 16

Fees          54.00
Taxes .
Copies .
AMT PAID      54.00

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
First American Title Company

RDE # 009
10/18/2006
8:00 AM

3078300-LA

——————— (Space Above This Line For Recording Data) ———————

LOAN #3304862711

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    OCTOBER 12, 2006
together with all Riders to this document.
(B) "Borrower" is LORETTA L BIRMINGHAM AND BERT L BIRMINGHAM, MARRIED TO
EACH OTHER.

Borrower's address is    1050 ORTEGA CIR, GILROY, CA  95020

, Borrower is the trustor under this Security Instrument.
(C) "Lender" is BANK OF AMERICA, N.A.

Lender is a NATIONAL BANKING ASSOCIATION
organized and existing under the laws of   THE UNITED STATES OF AMERICA

**CALIFORNIA** – Single Family

Page 1 of 16

BS6(CA)  (0207)           VMP Mortgage Solutions (800)521-7291
          CVCA 10/12/06 2:33 PM 3304862711

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 3 of
58
Page 1 of 16                                    Requested By: ttrapani, Printed: 7/12/2017 8:02 PM
Doc: CASCL-R-19146555-0009F

Lender's address is 275 S. VALENCIA AVENUE, BREA, CA 928230000

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is PRLAP, INC.

(E) "Note" means the promissory note signed by Borrower and dated OCTOBER 12, 2006
The Note states that Borrower owes Lender FOUR HUNDRED SEVENTEEN THOUSAND AND
00/100                                                                          Dollars
(U.S. $      417,000.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider      ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 4 of
                                              58
Doc: CASCLR-19146555~06085          Page 2 of 16          Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY          of  SANTA CLARA                              :
          [Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

Parcel ID Number: 808-27-008                    which currently has the address of
1050 ORTEGA CIR                                                      [Street]
GILROY                              [City] , California 95020          [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

BS6(CA)  (0207)                    Page 3 of 15
CVCA 10/12/06 2:33 PM 3304862711

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 6 of
58

Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 7 of
58

Page 5 of 16

Doc: CASCLR-19146555v06085                                    Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 8 of
Page 6 of 16

Doc: CASCLR:19146555~06085                                   Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Case: 16-53437     Doc# 76-3     Filed: 06/06/18     Entered: 06/06/18 11:11:04     Page 9 of 58

Page 7 of 16

Doc: CASCLR-19146555-v06085

Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 10
of 58

Page 8 of 16

Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 11
Page 9 of 16
Doc: CASCLR:19146555~06085                                    Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 12 of 58

Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 13
of 58

Page 11 of 16                                                 Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 14
of 58

Page 12 of 16                                    Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 15
of 58

Page 13 of 16

Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

Doc: CASCLR:19146555~06085

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                            LORETTA BIRMINGHAM          -Borrower


_____          _____ (Seal)
                                            BERT L BIRMINGHAM          -Borrower


_____ (Seal)   _____ (Seal)
                      -Borrower                                      -Borrower


_____ (Seal)   _____ (Seal)
                      -Borrower                                      -Borrower


_____ (Seal)   _____ (Seal)
                      -Borrower                                      -Borrower


BS6(CA)  (0207)
CVCA 10/12/06  2:33 PM 3304862711                   Page 14 of 15

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 16 of 58
Page 14 of 16                                        Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

State of California
County of SANTA CLARA            } ss.

On   10/12/06        before me,   C. JOHNSON, NOTARY PUBLIC
                                          personally appeared

LORETTA L. BIAMINGHAM & BERT L. BIRMINGHAM

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ (Seal)

C. JOHNSON
Comm. # 1608722
NOTARY PUBLIC · CALIFORNIA
Santa Clara County
My Comm. Expires Sep 23, 2009

BS6(CA)   (0207)
CVCA 10/12/06 2:33 PM 3304862711

Page 15 of 15

Doc: CASCLR:19146555~06085                                    Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

## DESCRIPTION

All that certain land situated in the State of California, County of **SANTA CLARA**, City of **GILROY**, described as follows:

**PARCEL ONE:**

**LOT 207, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 5616, UNIT NO. 8, CASTLEWOOD PARK", WHICH MAP WAS FILED FOR RECORD ON MAY 29, 1975 IN BOOK 356 OF MAPS, AT PAGES 22 AND 23, SANTA CLARA COUNTY RECORDS.**

**RESERVING FROM PARCEL ONE A DRAINAGE EASEMENT FOR INSTALLATION AND MAINTENANCE OF CONCRETE VEE GUTTER OVER THE SOUTHERLY 5 FEET THEREOF FOR THE BENEFIT OF LOTS 200 THROUGH 206 AND 208 SHOWN ON SAID MAP.**

**PARCEL TWO:**

**A DRAINAGE EASEMENT FOR INSTALLATION AND MAINTENANCE OF CONCRETE VEE GUTTER OVER THE SOUTHERLY 5 FEET OF LOTS 200 THROUGH 206 AND 208, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 5616, UNIT NO. 8, CASTLEWOOD PARK", WHICH MAP WAS FILED FOR RECORD ON MAY 29, 1975 IN BOOK 356 OF MAPS, AT PAGES 22 AND 23, SANTA CLARA COUNTY RECORDS.**

APN No: **808-27-008**

Page 7

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 18
of 58
Page 16 of 16                    Requested By: ttrapani, Printed: 7/12/2017 8:02 PM

# EXHIBIT 8



OMB Approval No. 2502-0265

# A. Settlement Statement (HUD-1)



A LENDER PROCESSING SERVICES COMPANY

| B. Type of Loan | | | | |
|---|---|---|---|---|
| 1. ☐ FHA  2. ☐ RHS  3. ☒ Conv. Unlns. | 6. File Number: | 7. Loan Number: | 8. Mortgage Insurance Case Number: | |
| 4. ☐ VA  5. ☐ Conv. Ins. | 15574684-99185187 | 245170633 | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| BERT L BIRMINGHAM<br>LORETTA L BIRMINGHAM<br>1050 ORTEGA CIRC<br>GILROY, CA 95020 | Final Amended HUD<br>True and Certified Copy<br>LSI Title Agency Inc | Bank of America, N.A.,<br>3175 Science Park Dr<br>Beachwood, OH  44122 |

| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
|---|---|---|
| 1050 ORTEGA CIRC<br>GILROY, CA 95020<br>SANTA CLARA County, California | LSI Title Company, a California Corporation<br>700 Cherrington Parkway<br>Coraopolis, PA 15108<br>(800) 552-1003<br><br>Place of Settlement:<br>700 Cherrington Parkway<br>Coraopolis, PA 15108<br>(800) 552-1003 | May 03, 2013<br><br>Disbursement Date:<br>May 06, 2013 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 6,865.11 | 403. | |
| 104. Payoff to Bank of America | 419,952.31 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 117. | | 417. | |
| 118. | | 418. | |
| **120. Gross Amount Due from Borrower** | 426,817.42 | **420. Gross Amount Due to Seller** | |
| **200. Amounts Paid by or in Behalf of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 425,190.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid by/for Borrower** | 425,190.00 | **520. Total Reduction Amount Due Seller** | |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | 426,817.42 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 425,190.00 | 602. Less reductions in amount due seller (line 520) | |
| 303. Cash ☒ From ☐ To Borrower | 1,627.42 | 603. Cash ☐ To ☐ From Seller | |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

## L. Settlement Charges

| | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| **700. Total Real Estate Broker Fees** | | | |
| Division of commission (line 700) as follows: | | | |
| 701. | | | |
| 702. | | | |
| 703. Commission paid at settlement | | | |
| 704. | | | |
| **800. Items Payable in Connection with Loan** | | | |
| 801. Our origination charge to Bank of America, N.A., its affiliates and subsidiaries, successors and assigns | $ 1,125.00 (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen to Bank of America, N.A., its affiliates and subsidiaries, successors | $ 2,125.95 (from GFE #2) | | |
| 803. Your adjusted origination charges to Bank of America, N.A., its affiliates and subsidiaries, successors and assigns | (from GFE A) | 3,250.95 | |
| 804. Appraisal fee to LandSafe Appraisal Services, Inc. | (from GFE #3) | | |
| 805. Credit report to LandSafe Credit, Inc. | (from GFE #3) POC:B $35.00 | | |
| 806. Tax service to BAC Tax Services Corporation | (from GFE #3) | 84.00 | |
| 807. Flood certification to LandSafe Flood Determination, Inc. | (from GFE #3) | 26.00 | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| **900. Items Required by Lender to Be Paid in Advance** | | | |
| 901. Daily interest charges from 5/8/2013 to 6/1/2013 @ $50.960000/day | (from GFE #10) | 1,223.04 | |
| 902. Mortgage insurance premium     for   months to | (from GFE #3) | | |
| 903. Homeowner's insurance | (from GFE #11) | | |
| 904. | | | |
| 905. | | | |
| **1000. Reserves Deposited with Lender** | | | |
| 1001. Initial deposit for your escrow account | (from GFE #9) | 1,209.12 | |
| 1002. Homeowner's insurance for   5   months @ $  152.84   per month | $ 764.20 | | |
| 1003. Mortgage insurance         months @ $  per month | $ | | |
| 1004. Property taxes | $ 445.00 | | |
| City/Town Taxes           months @ $  per month | | | |
| County/State Taxes for   5   months @ $  89.00   per month | | | |
| School District Taxes      months @ $  per month | | | |
| Other Taxes              months @ $  per month | | | |
| 1005.                   months @ $  per month | | | |
| 1006.                   months @ $  per month | | | |
| 1007. Aggregate Adjustment | $ -0.08 | | |
| **1100. Title Charges** | | | |
| 1101. Title services and lender's title insurance | (from GFE #4) | 1,005.00 | |
| 1102. Settlement or closing fee to LSI Title Company, a California Corporation | $ 655.00 | | |
| 1103. Owner's title insurance | (from GFE #5) | | |
| 1104. Lender's title insurance to LSI Title Company, a California Corporation | $ 450.00 | | |
| 1105. Lender's title policy limit $ 425,190.00 | | | |
| 1106. Owner's title policy limit $ | | | |
| 1107. Agent's portion of the total title insurance premium to LSI Title Agency | $ 387.00 | | |
| 1108. Underwriter's portion of the total title insurance premium to NTI | $ 63.00 | | |
| 1109. | $ | | |
| 1110. | $ | | |
| 1111. | $ | | |
| 1112. | $ | | |
| 1113. | $ | | |
| 1114. | $ | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Government recording charges | (from GFE #7) | 67.00 | |
| 1202. Deed $          Mortgage $67.00       Releases $ | | | |
| 1203. Transfer taxes | (from GFE #8) | | |
| 1204. City/County tax/stamps     Deed $          Mortgage $ | | | |
| 1205. State tax/stamps       Deed $          Mortgage $ | | | |
| 1206. | $ | | |
| 1207. | $ | | |
| 1208. | $ | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Required services that you can shop for | (from GFE #6) | | |
| 1302. | $ | | |
| 1303. | $ | | |
| 1304. | $ | | |
| 1305. | $ | | |
| 1306. | $ | | |
| 1307. | $ | | |
| 1308. | $ | | |
| 1309. | $ | | |
| 1310. | $ | | |
| 1311. | $ | | |
| **1400. Total Settlement Charges (enter on  lines 103, Section J and 502, Section K)** | | 6,865.11 | |

*POC = Paid outside of closing (L-Lender, B-Borrower, M-Mortgage Broker, S-Seller)

| Comparison of Good Faith Estimate (GFE) and HUD-1 Charges | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| **Charges That Cannot Increase** | **HUD-1 Line Number** | | |
| Our origination charge | # 801 | 1,125.00 | 1,125.00 |
| Your credit or charge (points) for the specific interest rate chosen | # 802 | 2,125.95 | 2,125.95 |
| Your adjusted origination charges | # 803 | 3,250.95 | 3,250.95 |
| Transfer taxes | # 1203 | 0.00 | 0.00 |

| Charges That In Total Cannot Increase More Than 10% | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Government recording charges | # 1201 | 175.00 | 67.00 |
| Credit report | # 805 | 35.00 | 35.00 |
| Tax service | # 806 | 84.00 | 84.00 |
| Flood certification | # 807 | 26.00 | 26.00 |
| Title services and lender's title insurance | # 1101 | 1,031.00 | 1,005.00 |
| | Total | 1,351.00 | 1,217.00 |
| | Increase between GFE and HUD-1 Charges | $-134.00 or | -9.92% |

| Charges That Can Change | | Good Faith Estimate | HUD-1 |
|---|---|---|---|
| Initial deposit for your escrow account | # 1001 | 2,079.00 | 1,209.12 |
| Daily interest charges | # 901 $50.960000/day | 1,223.04 | 1,223.04 |
| Homeowner's Insurance | # 903 | 1,834.00 | 0.00 |

**Loan Terms**

| | |
|---|---|
| **Your initial loan amount is** | $425,190.00 |
| **Your loan term is** | 30 years |
| **Your initial interest rate is** | 4.3750 % |
| **Your initial monthly amount owed for principal, interest, and any mortgage insurance is** | $2,122.91 Includes<br>☒ Principal<br>☒ Interest<br>☐ Mortgage Insurance |
| **Can your interest rate rise?** | ☒ No. ☐ Yes, it can rise to a maximum of _____ %. The first change will be on _____ and can change again every _____ after _____. Every change date, your interest rate can increase or decrease by _____%. Over the life of the loan, your interest rate is guaranteed to never be lower than _____ % or higher than _____ %. |
| **Even if you make payments on time, can your loan balance rise?** | ☒ No. ☐ Yes, it can rise to a maximum of $ _____ . |
| **Even if you make payments on time, can your monthly amount owed for principal, interest, and mortgage insurance rise?** | ☒ No. ☐ Yes, the first increase can be on _____ and the monthly amount owed can rise to $_____.<br>The maximum it can ever rise to is $_____. |
| **Does your loan have a prepayment penalty?** | ☒ No. ☐ Yes, your maximum prepayment penalty is $ _____ . |
| **Does your loan have a balloon payment?** | ☒ No. ☐ Yes, you have a balloon payment of $ _____ due in _____ years on _____ . |
| **Total monthly amount owed including escrow account payments** | ☐ You do not have a monthly escrow payment for items, such as property taxes and homeowner's insurance. You may pay these items directly yourself.<br>☒ You have an additional monthly escrow payment of $241.84 that results in a total initial monthly amount owed of $2,364.75. This includes principal, interest, any mortgage insurance and any items checked below:<br>☒ Property taxes ☒ Homeowner's Insurance<br>☐ Flood insurance ☐<br>☐ _____ ☐ _____ |

Note: If you have any questions about the Settlement Charges and Loan Terms listed on this form, please contact your lender.

Escrow No.: 15574684-99185187

## ATTACHMENT TO RESPA

BERT L BIRMINGHAM
LORETTA L BIRMINGHAM
1050 ORTEGA CIRC
GILROY, CA 95020

| | BUYER | SELLER |
|---|---|---|
| **Payoff Charges For Bank of America** | | |
| **Total Payoff $419,952.31** | | |
| Principal Balance | 417,000.00 | |
| Interest to 5/8/2013 | 3,045.74 | |
| Reconveyance Fee | 45.00 | |
| County Recording Fee | 25.00 | |
| Borrower Protection Plan | 222.83 | |
| Return Item Fee | 25.00 | |
| Less Available Escrow Balance | -411.26 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

**BORROWER'S:**

_Bert L Birmingham_
BERT L BIRMINGHAM

_Loretta L Birmingham_
LORETTA L BIRMINGHAM

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause funds to be disbursed in accordance with this statement.

_____
Settlement Agent

# EXHIBIT 9

Recording Requested By and
When Recorded Mail To:
ReconTrust Company, N.A.
2575 W. Chandler Blvd,
Mail Stop: AZ1-804-02-11
Chandler AZ 85224

| | |
|---|---|
| Fees. . . . | 50.00 |
| Taxes. . . | .00 |
| Copies . . | .00 |
| AMT PAID | 50.00 |

00222 14323

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
RECONTRUST - INGEO

RDE # 026
5/10/2013
08:56 AM

Above Space for Recorder's Use

DOCID_53687058487553736

## SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

WHEREAS, LORETTA L BIRMINGHAM, BERT L BIRMINGHAM , is the Trustor, PRLAP, INC. is the current trustee and Bank of America, N.A. is the current beneficiary ("Beneficiary") under that certain Deed of Trust dated 10/12/2006 and recorded on 10/18/2006 , as Instrument or Document No. 19146555 , in Book , Page , of Official Records of the County of Santa Clara , State of California .

WHEREAS, the undersigned Beneficiary hereby substitutes a new trustee, ReconTrust Company, N.A. ("Trustee") under the Deed of Trust, and Trustee does hereby reconvey, without warranty, to the person or persons legally entitled thereto, the estate now held by Trustee under the Deed of Trust.

Dated: 05/10/2013

Beneficiary:
Bank of America, N.A.

Maria Fregin
Assistant Vice President

Trustee:
ReconTrust Company, N.A.

Akia Pierce
Assistant Vice President

STATE OF ARIZONA
COUNTY OF Maricopa } S.S.

On 05/10/2013 , before me, Lorena Malaquias , Notary Public, personally appeared Maria Fregin , Assistant Vice President , of Bank of America, N.A. and Akia Pierce , Assistant Vice President , of ReconTrust Company, N.A. , whose identity(ies) was/were proven to me on the basis of satisfactory evidence to be the person(s) who he/she/they claim(s) to be and whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature(s) on the instrument the person(s), or entity (ies) upon behalf of which the person(s) acted, executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal the day and year last written.



LORENA MALAQUIAS
Notary Public - Arizona
My Commission Expires
December 4, 2014

Lorena Malaquias
Notary Public for said State and County
Phone # (800) 540-2684

LORETTA L BIRMINGHAM, BERT L BIRMINGHAM
1050 Ortega Cir
Gilroy CA 95020

# EXHIBIT 10



**First American Title Company**

1096 Blossom Hill Road, Suite 101 • San Jose, CA 95123

**Borrower's Estimated Settlement Statement**

| | |
|---|---|
| **Property:** 1050 Ortega Circle, Gilroy, CA 95020 | **File No:** 4318-2518353 |
| | **Officer:** Craig Johnson/CJ |
| | **New Loan No:** 3304862711 |
| | **Settlement Date:** |
| | **Disbursement Date:** 10/18/2006 |
| | **Print Date:** 10/12/2006, 5:27 PM |
| **Buyer:** Bert L. Birmingham, Loretta L, Birmingham | |
| **Address:** 1050 Ortega Circle, Gilroy, CA 95020 | |
| **Seller:** | |
| **Address:** | |

| Charge Description | Borrower Charge | Borrower Credit |
|---|---|---|
| **New Loan(s):** | | |
| Lender: Bank Of America, N.A. | | |
| New Loan to File - Bank Of America, N.A. | | 417,000.00 |
| Interest on New Loan 10/17/06 to 11/01/06 @$81.400000/day - Bank Of America, N.A. | 1,221.00 | |
| Loan Origination Fee - Bank Of America, N.A. | 4,170.00 | |
| Credit Report - Trans Union LLC          POC-L $0.80 | | |
| Tax Service Fee - HomeFocus Tax Services, LLC | 75.00 | |
| Flood Determination Fee - HomeFocus Services LLC | 11.00 | |
| Lender Premium Pricing Credit - Bank Of America, N.A. | | 5,000.00 |
| Appraisal Evaluation Fee - Bank Of America, N.A.          POC-L $35.00 | | |
| Application Fee - Bank Of America, N.A. | 200.00 | |
| Lender Closing Fee - Bank Of America, N.A. | 719.00 | |
| Tax Report Fee - Bank Of America, N.A. | 35.00 | |
| Aggregate Accounting Adjustment - Bank Of America, N.A. | -107.23 | |
| Hazard Insurance  11 mo(s) @$107.17/mo - Bank Of America, N.A. | 1,178.87 | |
| County Property Taxes  4 mo(s) @$77.53/mo - Bank Of America, N.A. | 310.12 | |
| | | |
| **Payoff Loan(s):** | | |
| Lender: Wells Fargo Bank, N.A. MAC B6955-01B | | |
| Principal Balance  - Wells Fargo Bank, N.A. MAC B6955-01B | 196,618.15 | |
| Statement/Forwarding Fee  - Wells Fargo Bank, N.A. MAC B6955-01B | 30.00 | |
| Interest through 08/31/06  - Wells Fargo Bank, N.A. MAC B6955-01B | 1,116.59 | |
| Termination Fees  - Wells Fargo Bank, N.A. MAC B6955-01B | 500.00 | |
| Lien Release & Recording Fee  - Wells Fargo Bank, N.A. MAC B6955-01B | 45.00 | |
| Fax Fee  - Wells Fargo Bank, N.A. MAC B6955-01B | 10.00 | |
| | | |
| **Title/Escrow Charges to:** | | |
| Notary Fee - First American Title Company | 60.00 | |
| One Rate (inc. 1108/Title Ins and 1101/Escrow Fee) - First American Title Company | 1,000.00 | |
| Record Trust Deed - 1 - First American Title Company | 80.00 | |
| Record Trust Deed - 2 - First American Title Company | 60.00 | |
| | | |
| **Disbursements Paid:** | | |
| Tax Installment:  Amount to Santa Clara County Tax Collector | 470.03 | |
| Payment for Account to Lexington National Insurance Corporation | 100,000.00 | |
| Amount Due to Sergio Roldan | 60,000.00 | |
| Payment on Account to Craig Bassett Attorney at Law | 40,000.00 | |
| | | |
| Cash ( From) (X To) Borrower | 14,197.47 | |
| | | |
| **Totals** | 422,000.00 | 422,000.00 |

Notice – This Estimated Settlement Statement is subject to changes, corrections or additions at the time of final computation of the Settlement Statement.

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 27
of 58

# EXHIBIT 11

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, address, and State Bar number)*: <br><br> *After recording, return to:* <br><br> David Hamerslough (SBN 95010) <br> Rossi, Hamerslough, Reischl & Chuck <br> 1960 The Alameda, Suite 200 <br> San Jose, CA 95126 <br><br> TEL NO.: (408) 261-4252  FAX NO. *(optional)*: (408) 261-4292 <br> E-MAIL ADDRESS *(Optional)*: dave@rhrc.net <br> [X] ATTORNEY FOR  [X] JUDGMENT CREDITOR  [ ] ASSIGNEE OF RECORD | **23537616** <br><br> Regina Alcomendras <br> Santa Clara County - Clerk-Recorder <br> 12/19/2016 01:14 PM <br><br> Titles: 1    Pages: 2 <br><br> Fees: $41.00 <br> Taxes: $0 <br> Total: $41.00 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Santa Clara**
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: 191 N. First Street
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Santa Clara

**FOR RECORDER'S USE ONLY**

| | |
|---|---|
| PLAINTIFF: Bert L. Birmingham, Loretta L. Birmingham <br> DEFENDANT: Sergio Roldan, et al. | CASE NUMBER: <br> 113CV243356 |

| | |
|---|---|
| **ABSTRACT OF JUDGMENT—CIVIL** <br> **AND SMALL CLAIMS**    [ ] Amended | FOR COURT USE ONLY |

1. The [X] judgment creditor [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      **Name and last known address**
      ┌ Loretta L. Birmingham ┐
        1565 E. Middle Ave.
        San Martin, CA 95046
      └                       ┘

   b. Driver's license no. [last 4 digits] and state: 3912  [ ] Unknown
   c. Social security no. [last 4 digits]: 7198  [ ] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address)*:
      Loretta L. Birmingham, Bert L. Birmingham, c/o their attorney,
      Craig J. Bassett, 25 West First Street, Morgan Hill, CA 95037

2. [X] Information on additional judgment debtors is shown on page 2.
3. Judgment creditor *(name and address)*:
   Sergio Roldan, c/o his attorneys: RHRC,
   1960 The Alameda Ste 200, San Jose, CA
   95126

4. [ ] Information on additional judgment creditors is shown on page 2.
5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

Date: November 28, 2016
David Hamerslough
(TYPE OR PRINT NAME)

▶ *David Hamerslough* (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 69,317.39
7. All judgment creditors and debtors are listed on this abstract.
8. a. Judgment entered on *(date)*: November 3, 2016
   b. Renewal entered on *(date)*:
9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
    is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of *(name and address)*:

11. A stay of enforcement has
    a. [X] not been ordered by the court.
    b. [ ] been ordered by the court effective until *(date)*:

12. a. [X] I certify that this is a true and correct abstract of
        the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

[SEAL]

DAVID H. YAMASAKI
Chief Executive Officer, Clerk

This abstract issued on *(date)*:
**DEC 19 2016**

Clerk, by **J. CAO-NGUYEN**, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. July 1, 2014]

**ABSTRACT OF JUDGMENT—CIVIL**
**AND SMALL CLAIMS**

Roldan

Code of Civil Procedure, §§ 488.480,
674, 700.190

Page 1 of 2

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 14:41:01    Page 29 of 58

Doc: CASCLR:23537616~06085

Requested By: tfrapani, Printed: 2/1/2018 2:09 PM

| PLAINTIFF: Bert L. Birmingham, Loretta L. Birmingham | COURT CASE NO: |
|---|---|
| DEFENDANT: Sergio Roldan, et al. | 113CV243356 |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address)*:

14. Judgment creditor *(name and address)*:

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.     Name and last known address

Bert L. Birmingham
1565 E. Middle Ave.
San Martin, CA 95046

Driver's license no. [last 4 digits] and state:
7680     ☐ Unknown
Social security no. [last 4 digits]:     ☐ Unknown
3216
Summons was personally served at or mailed to *(address)*:
Loretta L. Birmingham, Bert L.
Birmingham, c/o of their attorney,
Craig J. Bassett,25 West First
Steet, Morgan Hill,CA 95037

17.     Name and last known address

Driver's license no. [last 4 digits] and state:
    ☐ Unknown
Social security no. [last 4 digits]:     ☐ Unknown
Summons was personally served at or mailed to *(address)*:

18.     Name and last known address

Driver's license no. [last 4 digits] and state:
    ☐ Unknown
Social security no. [last 4 digits]:     ☐ Unknown
Summons was personally served at or mailed to *(address)*:

19.     Name and last known address

Driver's license no. [last 4 digits] and state:
    ☐ Unknown
Social security no. [last 4 digits]:     ☐ Unknown
Summons was personally served at or mailed to *(address)*:

20. ☐ Continued on Attachment 20.

EJ-001 [Rev July 1, 2014]
NolaDresh
ESSENTIAL FORMS™

**ABSTRACT OF JUDGMENT - CIVIL
AND SMALL CLAIMS**

Roldan

Page 2 of 2

# EXHIBIT 12

| | |
|---|---|
| 1 | Craig J. Bassett (SB# 106825) |
| 2 | Attorney at Law |
| 3 | 25 W. First Street |
| 4 | Morgan Hill, CA 95037-4559 |
| 5 | TEL (408) 779-0007 |
| 6 | FAX (408) 778-6005 |
| 7 | EMAIL chassett@garlic.com |

**(ENDORSED)**
# FILED
**MAR 21 2013**

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY_____DEPUTY

J. Oco-Neyryop

8   Attorneys for Plaintiffs
9   BERT L. BIRMINGHAM and
10   LORETTA L. BIRMINGHAM

11       SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
12       Downtown Main Courthouse 191 N. First Street, San Jose, CA 95113
13       (Unlimited Jurisdiction — Civil Case)

| | |
|---|---|
| 14 BERT L. BIRMINGHAM, and | Case No. **113CV243356** |
| 15 LORETTA L. BIRMINGHAM, | **COMPLAINT FOR CANCELLATION OF** |
| 16     Plaintiffs, | **DEED OF TRUST AND TO QUIET TITLE** |
| 17   vs. | **TO REAL PROPERTY** |
| 18 SERGIO ROLDAN, and | Causes of Action: |
| 19 DOES 1 to 20; | 1st   Cancellation of Deed of Trust |
| 20     Defendants. |     [Civ. Code, § 3412] |
| | 2nd   Quiet Title to Real Property |
| |     [Code Civ. Proc., § 760.010 et seq.] |

21     Plaintiffs BERT L. BIRMINGHAM, and LORETTA L. BIRMINGHAM allege:

22   **Identity and Capacity of Parties**

23     1.   Each plaintiff named above is a competent adult.

24         a.     Plaintiff BERT L. BIRMINGHAM is also known as Bert LeRoy

25   Birmingham.

26         b.     Plaintiff LORETTA L. BIRMINGHAM is also known as Loretta Louise

27   Birmingham.

28     2.   Each defendant named above is a natural person.

Law Offices of
CRAIG J. BASSETT
25 W. First Street
Morgan Hill, CA
95037-4559
(408) 779-0007

- 1 -
Complaint for Cancellation of Deed of Trust and to Quiet Title to Real Property     March 19, 2013

a.    Defendant SERGIO ROLDAN is also known as Sergio Rafael Roldan.

b.    Defendant named above was licensed as a real estate broker in the state of California on about August 29, 2007, license identification number 01404847, but that license expired on August 28, 2011. Defendant's mailing address according to the records maintained by the Department of Real Estate of the State of California was 1489 Glenwood Avenue, San Jose, California 95125.

c.    Before defendant was licensed as a broker, he was licensed as a salesperson on December 29, 2003.

3.    The true names and capacities of defendants sued as DOES are unknown to plaintiff who will amend this complaint when the same is ascertained.

a.    DOE defendants 1 to 10 were the agents, employees, or successors of some or all of the named defendants and acted within the scope of that agency or employment.

b.    DOE defendants 11 to 20 are persons whose capacities are unknown to plaintiff.

**Convenience in Pleading**

4.    As used in this pleading, the masculine, feminine, or neuter gender, and the singular or plural number, shall include the others whenever the context so indicates.

5.    Dates alleged herein may be approximate.

6.    Exhibits hereto are incorporated by reference.

**Jurisdiction**

7.    This court is the proper court because real property that is the subject of this action is located here.

**Allegations Made on Information and Belief**

8.    The following paragraphs of this pleading are alleged on information and belief: 2, 3, 20, 21, 27, and 30.

**General Allegations Common to All Causes of Action**

9.    The real property which is the subject of this action is described as follows:

- 2 -

Law Offices of
CRAIG J. BASSIN F
15 W. First Street
Morgan Hill, CA
95037-4559

Complaint for Cancellation of Deed of Trust and to Quiet Title to Real Property    March 19, 2013

<u>Legal Description:</u>

Parcel One:

Lot 207, as shown upon that certain map entitled, "Tract No. 5616, Unit No. 8, Castlewood Park", which Map was filed for record on May 29, 1975 in Book 356 of Maps, at pages 22 and 23, Santa Clara County Records.

Reserving from Parcel One a drainage easement for installation and maintenance of concrete vee gutter over the southerly 5 feet thereof for the benefit of Lots 200 through 206 and 208 shown on said Map.

Parcel Two:

A drainage easement for installation and maintenance of concrete vee gutter over the southerly 5 feet of Lots 200 through 206 and 208, as shown upon that certain map entitled, "Tract No. 5616, Unit No. 8, Castlewood Park", which Map was filed for record on May 29, 1975 in Book 356 of Maps, at pages 22 and 23, Santa Clara County Records.

<u>Assessor's Parcel Number:</u>

808-27-008

<u>Commonly known address:</u>

1050 Ortega Circle, Gilroy, California 95020-5316 in Santa Clara County

10.     Plaintiffs are now and at all times mentioned herein were the owners of the subject real property described above in which they live as their primary residence.

11.     There is in existence a certain written instrument that purports to be a short form deed of trust with assignment of rents dated December 21, 2006, with "Bert L. Birmingham and Loretta L. Birmingham, his wife, as joint tenants" shown as trustor, "Financial Title Company, a California Corporation" as trustee, and "Sergio Roldan, a married man as his sole and separate property" as beneficiary (the deed of trust). The deed of trust describes the real property as its subject and was recorded on March 22, 2007 as document number 19352696, Official Records Santa Clara County, California, by Financial Title Company as an accommodation to defendant SERGIO ROLDAN (Order # 41183295-275-SQ1). A copy of the recorded deed of trust is attached as Exhibit 1.

Law Offices of
CRAIG J. BASSETT
25 W. First Street
Morgan Hill, CA
95037-4539

- 3 -

Complaint for Cancellation of Deed of Trust and to Quiet Title to Real Property          March 19, 2013

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 34 of 58

12.     Plaintiffs do not know who, if anyone, has possession or control of the original of the deed of trust.

13.     Although plaintiffs have a vague recollection of going in about 2006 or 2007 to an upstairs office on East Dunne Avenue in Morgan Hill, California where defendant Sergio Roldan apparently had a business office and there signing some papers which defendant presented to plaintiffs at the time, neither plaintiff remembers signing the deed of trust. In addition, neither can remember signing the notary book of the notary public (Baljinder Sandhu, commission # 1706610) who purportedly notarized the deed of trust on March 12, 2007. What plaintiffs do recall is that defendant told them that what they were signing was for the sole purpose of conducting a "credit check". Plaintiffs had no idea that defendant would encumber their residence without making a loan or providing valuable consideration to justify recording this security instrument.

14.     Plaintiffs did not authorize defendant to record the purported deed of trust.

15.     In the body of the deed of trust it mentions a purported promissory note dated December 21, 2006, with a maturity date in 2007, in the principal sum of $60,476.00, as the indebtedness which the deed of trust is intended to secure. It purports that "Trustor", meaning plaintiffs, are the maker of this promissory note and that defendant as "Beneficiary" is the payee of this note. In truth and in fact, at no time did plaintiffs, or either of them, sign or deliver any such promissory note to defendant. In truth and in fact, at no time have plaintiffs, or either of them, ever become indebted to defendant for any reason.

16.     Defendant did not loan any money to plaintiffs and did not otherwise furnish any valuable consideration to plaintiffs at any time. Plaintiffs have never received any money from defendant, have never signed any paper acknowledging or evidencing an indebtedness to defendant, and have never owed defendant money or any other obligation.

17.     Plaintiffs have never made any installment payments to defendant. And defendant has never made any demand, written or oral, upon plaintiffs to pay defendant money or otherwise perform any purported obligation to defendant and has never given plaintiffs any notice of any purported indebtedness or other obligation or of a default in any purported indebtedness.

Law Offices of
CRAIG J. BASSETT
25 W. First Street
Morgan Hill, CA
95037-4599
(408) 778-7200

- 4 -

Complaint for Cancellation of Deed of Trust and to Quiet Title to Real Property          March 19, 2013

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 35 of 58

18.    Plaintiffs were not even aware of the deed of trust's existence until about November 2012 when, to their great surprise and shock, it was brought to their attention by an escrow company which had ordered a preliminary report in connection with plaintiffs' attempted refinance of their subject real property.

19.    The deed of trust is therefore a *fraud and a sham* and is voidable for invalidity and lack of consideration.

20.    Plaintiffs desire to refinance the property with the holder of the first mortgage (Bank of America); however, they cannot do so as long as the deed of trust encumbers the property. If the recorded deed of trust to defendant is left outstanding, then plaintiffs may lose their opportunity to refinance. In addition, they will also eventually suffer higher installment payments under the current terms and conditions of the first mortgage if not able to refinance.

21.    Plaintiffs have tried to contact defendant, but without success. They believe that he has fled the country and is living in South America somewhere. His flight is evidence of his nefarious intent to harm plaintiffs by wrongfully encumbering their residence.

**Causes of Action**

22.    Each of the allegations of the causes of action set out below shall be deemed to be incorporated into each other cause of action by reference.

23.    The following causes of action are set out below, are pled independently, and the statements above apply to each:

1ˢᵗ    Cancellation of Deed of Trust [Civ. Code, § 3412]

2ⁿᵈ    Quiet Title to Real Property [Code Civ. Proc., § 760.010 *et seq.*]

Law Offices of
CRAIG J. BASSETT
35 W. First Street
Morgan Hill, CA
95037-4559
(408) 778-4400

- 5 -
Complaint for Cancellation of Deed of Trust and to Quiet Title to Real Property                    March 19, 2013

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 36 of 58

## FIRST CAUSE OF ACTION

### Cancellation of Deed of Trust
### By Plaintiffs BERT L. BIRMINGHAM, and LORETTA L. BIRMINGHAM
### Against Defendant SERGIO ROLDAN

24.     **Purported Deed of Trust.** On March 22, 2007, a purported deed of trust was recorded in Official Records, Santa Clara County, California appearing to encumber the subject real property owned by plaintiffs, as described above.

25.     **Serious Injury from Invalid Deed.** The purported deed of trust, if left outstanding, may cause serious injury to plaintiffs against whom it is voidable.

26.     **Cancellation of Deed of Trust.** The purported deed of trust must be adjudged cancelled and void for lack of consideration and invalidity as described above.

27.     **Attorney Fees.** Defendant recorded the written instrument intentionally and willfully to injure plaintiffs and to unlawfully encumber their real property for some improper collateral advantage or purpose of extortion. Under sections A(3) and B(5) on page 2 of the purported deed of trust, defendant supposedly holds the right to recover attorney fees against plaintiffs. Accordingly, under the reciprocity provisions of Civil Code section 1717, plaintiffs are entitled to recover attorney fees against defendant in defense of defendant's recordation of the invalid deed of trust, according to proof.

## SECOND CAUSE OF ACTION

### Quiet Title to Real Property
### By Plaintiffs BERT L. BIRMINGHAM, and LORETTA L. BIRMINGHAM
### Against Defendant SERGIO ROLDAN

28.     **Real Property.** Plaintiffs are and at all relevant times mentioned herein were the owners of the subject real property.

29.     **Basis for Title.** The basis of plaintiffs' title is a deed from a certain named grantor granting the above-described real property in fee simple to plaintiffs, recorded on March 29, 1976, as document number 5250241, Official Records, Santa Clara County, California.

Law Offices of
CHARLI BASSETT
23 W. First Street
Morgan Hill, CA
95037-4559

Complaint for Cancellation of Deed of Trust and to Quiet Title to Real Property                    March 19, 2013

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 37 of 58

30. **Quiet Title to Real Property.** Plaintiffs are seeking to quiet title against defendant who claims some right, title, estate, lien, or interest in and to the lands of plaintiff as described in this complaint, based on the purported deed of trust described above. The claim of defendant is without any right whatever and in truth and in fact defendant has no right, title, estate, lien, or interest whatever in the real property, or any part of that property.

31. **Effective Date.** Plaintiffs seek to quiet title as of the date this complaint was filed.

## PRAYER FOR RELIEF

BASED ON THE FOREGOING, plaintiffs pray for judgment against defendants, jointly and severally, for such relief as is fair, just and equitable and for:

1. For a declaration that the purported deed of trust is void and invalid.

2. For judgment, which when a certified copy of it is recorded in the Official Records of Santa Clara County, California, will thereupon expunge that deed of trust *nunc pro tunc.* [*See* Gov. Code, § 27326 (recorded certified copy of judgment affecting real property imparts notice to all persons of its contents).]

3. For a judgment quieting title in plaintiffs and declaring that plaintiffs are the owner in fee simple of the subject real property and that defendant has no interest in the property adverse to plaintiffs.

4. Costs incurred in this action, including reasonable attorney fees.

Dated: March 19, 2013

_____
Craig J. Bassett, Attorney for Plaintiffs

- 7 -
Complaint for Cancellation of Deed of Trust and to Quiet Title to Real Property          March 19, 2013

Case: 16-53437   Doc# 76-3   Filed: 06/06/18   Entered: 06/06/18 11:11:04   Page 38 of 58

## VERIFICATION

I am one of the plaintiffs in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters that are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: March 19, 2013

*Loretta L. Birmingham*

Loretta L. Birmingham, Plaintiff

- 8 -

Complaint for Cancellation of Deed of Trust and to Quiet Title to Real Property          March 19, 2013

| DOCUMENT: 19352696 | | Pages: 4 |
|---|---|---|
| | Fees | 25 00 |
| | Taxes. | |
| | Copies. | |
| | AMT PAID | 25 00 |

RECORDING REQUESTED BY
Financial Title Company
AND WHEN RECORDED MAIL TO

Name Sergio Roldan
Street 1645 East San Martin Avenue
Address San Martin, CA 95046
City/State Zip

Order No. 41183299-275-SQ1

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Financial Title Company

RDE # 014
3/22/2007
8:00 AM

**ACCOMMODATION ONLY**                    SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST WITH ASSIGNMENT OF RENTS
(This Deed of Trust contains a "DUE-ON-SALE" clause)

This DEED OF TRUST, made December 21, 2006, between

Bert L. Birmingham and Loretta L. Birmingham, his wife, as joint tenants, herein called TRUSTOR,
whose address is 1060 Ortega Circle     Gilroy, CA 95020
      (Number and Street)    (City)    (State)    (Zip)

Financial Title Company, a California Corporation, herein called TRUSTEE, and

Sergio Roldan, a married man as his sole and separate property, |         , herein called
BENEFICIARY,

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale, that property described as:

See Exhibit A attached hereto and made a part hereof.

If the trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at its option, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any note evidencing the same, immediately due and payable.

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the Purpose of Securing (1) payment of the sum of $ 80,470.00, with interest thereon according to the terms of a promissory note or notes of even date, with a maturity year of 3007 , herewith made by Trustor, payable to order of Beneficiary, and indorsed thereon; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it to so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

D-8 (Page 1)                    3/94                    efdotdes.rev (003699)

Order: Non-Order Search  Doc: CASCLR:19352696      Public Record Page 1 of 4      Created By: rahhan  Printed: 11/21/2012 11:16:29 AM PST

Birmingham v. Roldan                    Exhibit 1 to Complaint, Page 1 of 4

DO NOT RECORD

The following is a copy of Subdivision A and B of the fictitious Deed of Trust recorded in each county in California as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

A. To protect the security of this Deed of Trust, Trustor agrees:

(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay, at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B. It is mutually agreed:

(1) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(2) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(3) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

(5) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the persons legally entitled thereto.

(7) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(9) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

REQUEST FOR FULL RECONVEYANCE

TO Financial Title Company, TRUSTEE:

The undersigned is the legal owner and holder of the note or notes, and of all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidences of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated ____________________ ____________________

Signature must be notarized ____________________

Please mail Deed of Trust,
Note and Reconveyance to ____________________

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of trust recorded in the book and page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3780 | 347 | Solano | 1287 | 621 |
| Butte | 1030 | 513 | Los Angeles | T-3570 | 874 | Sacramento | 71-10-31 | 615 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4768 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1160 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego SERIES 5 Book 1964, Page 149774 | | | | | |

Said agreements, terms and provisions contained in said subdivision A and B, (identified in all counties are printed on the reverse side hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The foregoing assignment of rents is absolute unless initialed here, in which case, the assignment serves as additional security.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

Dated: December 21, 2006

STATE OF CALIFORNIA
COUNTY OF SANTA CLARA ss.

On MAR 12th, 07 before me, BALINDER SANDHU

Notary Public, personally appeared

BERT L. BIRMINGHAM & LORETTA L. BIRMINGHAM personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature Balinder Sandhu

(This area for official notarial seal)

Bert L. Birmingham
Loretta L. Birmingham

BALINDER SANDHU
COMM #1706810
Notary Public-California
SANTA CLARA COUNTY
My Comm. Exp. Dec 20, 2010

D-3 (Page 2)                    3/94

Order: Non-Order Search  Doc: CASCLR:19352090                    Page 3 of 4                    Created By: faumon  Printed: 11/21/2012 11:16:40 AM PST

Public Record

Birmingham v. Roldan

Exhibit 1 to Complaint, Page 3 of 4

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 42 of 58

**Exhibit A**

All that certain real property situated in the City of Gilroy, County of Santa Clara, State of California, described as follows:

PARCEL ONE:

LOT 207, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 5816, UNIT NO. 8, CASTLEWOOD PARK", WHICH MAP WAS FILED FOR RECORD ON MAY 29, 1975 IN BOOK 356 OF MAPS, AT PAGES 22 AND 23, SANTA CLARA COUNTY RECORDS.

RESERVING FROM PARCEL ONE A DRAINAGE EASEMENT FOR INSTALLATION AND MAINTENANCE OF CONCRETE VEE GUTTER OVER THE SOUTHERLY 5 FEET THEREOF FOR THE BENEFIT OF LOTS 200 THROUGH 206 AND 208 SHOWN ON SAID MAP.

PARCEL TWO:

A DRAINAGE EASEMENT FOR INSTALLATION AND MAINTENANCE OF CONCRETE VEE GUTTER OVER THE SOUTHERLY 5 FEET OF LOTS 200 THROUGH 206 AND 208, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "TRACT NO. 5816, UNIT NO. 8, CASTLEWOOD PARK", WHICH MAP WAS FILED FOR RECORD ON MAY 29, 1975 IN BOOK 356 OF MAPS, AT PAGES 22 AND 23, SANTA CLARA COUNTY RECORDS.

Birmingham v. Roldan                                    Exhibit 1 to Complaint, Page 4 of 4

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SERGIO ROLDAN, and
DOES 1 to 20;

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BERT L. BIRMINGHAM, and
LORETTA L. BIRMINGHAM,



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

(ENDORSED)
**F I L E D**
MAR 21 2013
DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY_____ DEPUTY
J. Cao-Nguyen

**SUM-100**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Superior Court of California, County of Santa Clara
Downtown Main Courthouse 191 N. First Street, San Jose, CA 95113

**CASE NUMBER:**
*(Número del Caso):*
**113CV243356**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Craig J. Bassett (SB# 106825) 25 W. First Street, Morgan Hill, CA 95037-4559 TBI, (408) 779-0007

DATE: **MAR 21 2013**    DAVID H. YAMASAKI    Clerk, by _____ , Deputy
*(Fecha):*    Chief Executive Officer, Clerk    *(Secretario)*    J. Cao-Nguyen    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

Superior Court of California, County of Santa Clara
191 N. First St., San Jose, CA 95113

CASE NUMBER: **1 1 3 C V 2 4 3 3 5 6**

### PLEASE READ THIS ENTIRE FORM

*PLAINTIFF* (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued): You must do each of the following to protect your rights:

1. You must file a written response to the *Complaint*, using the proper legal form or format, in the Clerk's Office of the Court, within 30 days of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

Warning: If you, as the Defendant, do not follow these instructions,
you may automatically lose this case.

---

*RULES AND FORMS:* You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

---

Your Case Management Judge is: Honorable Mark H. Pierce                    Department:    9

The 1st CMC is scheduled for: (Completed by Clerk of Court)

    Date:     JUL 1 6 2013     Time: 1:30 PM    in Department:  9

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

    Date: _____     Time: _____    in Department: _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

Form CV-5012 REV 7/01/08                    CIVIL LAWSUIT NOTICE                    Page 1 of 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< ADR can save time. A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< ADR can save money. Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< ADR provides more participation. Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

< Mediation may be appropriate when:
    < The parties want a non-adversary procedure
    < The parties have a continuing business or personal relationship
    < Communication problems are interfering with a resolution
    < There is an emotional element involved
    < The parties are interested in an injunction, consent decree, or other form of equitable relief

< Neutral evaluation, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
    < The parties are far apart in their view of the law or value of the case
    < The case involves a technical issue in which the evaluator has expertise
    < Case planning assistance would be helpful and would save legal fees and costs
    < The parties are interested in an injunction, consent decree, or other form of equitable relief

-over-

ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION
CV-5003 REV 6/08

< Arbitration is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties, then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
  < The action is for personal injury, property damage, or breach of contract
  < Only monetary damages are sought
  < Witness testimony, under oath, needs to be evaluated
  < An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

< Civil Judge ADR allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
  < The parties have complex facts to review
  < The case involves multiple parties and problems
  < The courthouse surroundings would be helpful to the settlement process

< Special masters and referees are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

< Settlement conferences are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

Contact:
Santa Clara County Superior Court                          Santa Clara County DRPA Coordinator
ADR Administrator                                          408-792-2704
408-882-2530

---

ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION

CV-5003 REV 6/08

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Craig J. Bassett, Attorney at Law SB/# 106825
25 W. First Street
Morgan Hill, CA. 95037-4559

TELEPHONE NO. 408-779-0007        FAX NO. 408-778-6005
ATTORNEY FOR *(Name)*: Plaintiffs Bert L. Birmingham and Loretta L. Birmingham

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: 191 N. First Street
CITY AND ZIP CODE: San Jose, CA. 95113
BRANCH NAME: Downtown Main Courthouse (Unlimited Civil Case)

CASE NAME:
Birmingham v. Roldan

**(ENDORSED)**
**F I L E D**

MAR 2 1 2013

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY_____DEPUTY
J. Cao-Nguyen

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | **1 1 3 C V 2 4 3 3 5 6**  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | Real Property | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| Non-PI/PD/WD (Other) Tort | ☐ Wrongful eviction (33) | Enforcement of Judgment |
| ☐ Business tort/unfair business practice (07) | ☑ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | Unlawful Detainer | Miscellaneous Civil Complaint |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | Miscellaneous Civil Petition |
| ☐ Professional negligence (25) | Judicial Review | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| Employment | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☐ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify)*: two (2)
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: Mar 19 2013
Craig J. Bassett, Attorney for Plaintiff
    (TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

# EXHIBIT 13





1

2

3

4

5

6                    SUPERIOR COURT OF CALIFORNIA

7                        COUNTY OF SANTA CLARA

8

9    BERT BIRMINGHAM and

10   LORETTA L. BIRMINGHAM          Case No.:  1-13-CV-243356

11             Plaintiff,

12                                  JUDGMENT

13   vs.

14

15   SERGIO ROLDAN

16             Defendant.

17

18        A Court trial having been held before the Honorable Risë Jones Pichon, undersigned, in

19   Department 20 of the above-captioned court with the Court's Statement of Decision being issued

20   and filed on October 15, 2014.

21        IT IS ORDERED, ADJUDGED AND DECREED

22        Plaintiffs' 2nd set of objections to the Statement of Decision is denied.

23        1.    Plaintiffs' prayer for a declaration that the Deed of Trust is void and invalid is

24              denied.

25        2.    Plaintiffs' prayer for a judgment which will expunge the Deed of Trust nunc pro

26              tunc is denied.

27

28

1-13-CV-243356 Birmingham vs. Roldan        1 of 2                        JUDGMENT

Case 15-52244    Claim 1-2    Filed 09/10/15    Desc Main Document    Page 13 of 23

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 50
of 58

3. Plaintiffs' prayer for a judgment quieting title and declaring that Plaintiffs are the owners in fee simple of the subject real property and that Defendant has no interest in the property adverse to Plaintiffs is denied.

Date: 12/1/14

_Risë Jones Pichon_

HON. RISË JONES PICHON
JUDGE OF THE SUPERIOR COURT

Hon. Risë Pichon

1-13-CV-243356 Birmingham vs. Roldan          2 of 2                    JUDGMENT

# EXHIBIT 14

(ENDORSED)

**FILED**

FEB 2 7 2015

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
BY_____ DEPUTY

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| Bert Birmingham and Loretta Birmingham | Case No. 1-13-CV-243356 |
| Plaintiff(s), | |
| vs. | ORDER RE ATTORNEY FEES |
| Sergio Roldan | |
| Defendant(s). | |

Defendant Sergio Roldan's motion for attorney fees against Plaintiffs Bert Birmingham and Loretta Birmingham came on regularly for hearing in Department 17 of the Superior Court of California for the County of Santa Clara, located at 161 N. First Street, San Jose, California 95113, at 9:30 a.m. on February 23, 2015, the Honorable Risë Jones Pichon presiding.

In determining what constitutes a reasonable attorney fee when a contract or statute provides for such an award, courts should consider the nature of the litigation, its difficulty, the amount involved, and the skill required and success of the attorney's efforts, his or her learning, age and experience in the particular type of work demanded, the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed. (See *Church of Scientology v. Wollersheim* (1996) 42 Cal. App. 4th 628,

1  659; see also *Hadley v. Krepel* (1985) 167 Cal. App. 3d 677, 682.)  The amount to be awarded to
2  a party as attorney fees is a matter within the sound discretion of the trial judge.  (See *Church of*
3  *Scientology v. Wollersheim, supra,* 42 Cal. App. 4th at p. 659; see also *Clayton Development Co.*
4  *v. Falvey* (1988) 206 Cal. App. 3d 438, 447.)
5        Here, Defendant requests an award of attorney fees in the amount of $43,868.00.  In
6  support of his request, Defendant submits declarations from his counsel, David Hamerslough,
7  and itemized monthly invoices. Plaintiffs do not object to amount of fees requested.  They argue
8  that Defendant is not entitled to any award of attorney fees.
9        The Court finds that Defendant is the prevailing party and is entitled to attorney fees
10 under the authority *Mordechai Kachlon et al., v. Debra W. Markowitz et al.,* (2008) 168 Cal.
11 App. 4th 316, and that $43,119.00 is a reasonable amount.
12       Having considered the papers, the evidence, and oral argument of counsel,

14 THE COURT HEREBY ORDERS THAT:
15 1.    Mr. Roldan's motion for attorney fees against Bert Birmingham and Loretta
16       Birmingham is GRANTED
17 2.    Mr. Roldan shall recover from Bert Birmingham and Loretta Birmingham
18       attorney fees in the amount of $43,119.00



21     FEB·2 7 2015                                    **RISÉ JONES PICHON**
22 Date: _____
23                                                 HON. RISË JONES PICHON
24                                                 JUDGE OF THE SUPERIOR COURT

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 54
of 58

Case: 16-53437    Doc# 76-3    Filed: 06/06/18    Entered: 06/06/18 11:11:04    Page 55 of 58

# EXHIBIT  15

**23806995**

Regina Alcomendras
Santa Clara County - Clerk-Recorder
**11/17/2017 12:20 PM**

Titles: 1       Pages: 2
Fees:  $28.00
Taxes: $0
Total: $28.00

Recording Requested By:

AND

When Recorded, Mail To:

The Foreclosure Company, Inc.
3001 So. Winchester Blvd., Suite A
Campbell, California 95008

FC No.: 17-233

## NOTICE OF TRUSTEE'S SALE No. 17-233

NOTE TO BORROWER: THERE IS A SUMMARY OF THIS INFORMATION IN THE DOCUMENT ATTACHED

注：本文件包含一个信息摘要       참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED December 21, 2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

**On December 14, 2017 at 10:00 am,** at the Gated North Market Street entrance of the Superior Courthouse, 191 N. First Street, San Jose, Ca. 95113, Sergio Roldan, as the Substituted Trustee, will sell at public auction to the highest bidder for cash (payable at the time of sale in lawful money of the United States) the following described property situated in the County of Santa Clara, State of California, described more fully within said Deed of Trust.

The street address and other common designation of the real property described above is purported to be:       1050 Ortega Circle, Gilroy, Ca. 95020       APN:  808-27-008
The undersigned disclaims any liability for any incorrectness of the street address and other common designation shown here.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien you should understand that there are risks involved in bidding at a Trustee's Sale (auction). You will be bidding on a lien. Although you will receive title to the property, placing the highest bid at a Trustee auction DOES NOT automatically entitle you to free and clear ownership of the property. You should be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction you will be, or may be, responsible for paying off all liens senior to the lien being auctioned before you can receive clear title to the property. You are encouraged to investigate the existence, priority and amount of outstanding liens that may exist on this property by contacting the County Recorder's Office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources you should be aware that the same lender may hold more than one mortgage or Deed of Trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this Notice of Sale may be postponed one or more times, pursuant to California Civil Code Section 2924g. The law requires that information about Trustee Sale postponements be made available to you and the public, as a courtesy to those not present at the sale. If you would like to know whether your sale date has been postponed, and/or the rescheduled time and date for the sale of this property, you may call (408) 374-7204 or visit www.foreclosureco.com and check Trustee's Sale #17-233. Information about postponements that are short in duration or that occur close to the scheduled sale time may not immediately be reflected in the telephone information or online. The best way to verify postponement information is to attend the scheduled sale.

Said sale will be made without covenant or warranty, expressed or implied regarding title, possession or encumbrances to satisfy the obligations secured by and pursuant to the Power of Sale conferred in the Deed of Trust executed by
Bert L. Birmingham and Loretta L. Birmingham, his wife, as joint tenants,
as Trustor,
Recorded on March 22, 2007 as Instrument No. 19352696 in the Office of the County Recorder of Santa Clara County. At the time of the initial publication of this Notice, the amount due to satisfy the obligation secured by the subject Deed of Trust, estimated costs, expenses, fees and advances is $201,914.98. To verify the opening bid call (408) 374-7204, before the sale date.

The Foreclosure Company, Inc., as Agent
3001 So. Winchester Blvd., Suite A
Pub. dates: 11/24, 12/1 & 12/8/2017                Campbell, California 95008

Date: November 8, 2017                By: _____
Christina Leigh, Foreclosure Officer

**This office is assisting the Beneficiary in collecting
a debt and any information obtained may be used
for that purpose whether received verbally or in writing.**

THIS AREA HAS INTENTIONALLY BEEN LEFT BLANK